

**SIGNED this 26th day of September, 2018**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **George Robert Hanson** | ) | No. 4:17-bk-15656-SDR |
| **Mary Darlene Hanson,** | ) | Chapter 11 |
| | ) | |
| Debtors | ) | |

### MEMORANDUM

**I.    Introduction**

This case came to be heard on July 23, 2018, upon the Motion of Debtors for Modification of Their Confirmed Chapter 11 Plan filed pro se by Debtor George Robert Hanson and Joint Debtor Mary Darlene Hanson ("the Debtors") on May 21, 2018.  (Doc. No. 372).[1]  Also before the Court are objections to the Debtors' motion to modify filed by the U.S. Trustee (Doc. No. 387) and

---

[1] All docket references are to this case unless otherwise indicated.

1

creditor Nationstar Mortgage, LLC, d/b/a Mr. Cooper ("Mr. Cooper") (Doc. No. 384). At the hearing, Mr. Hanson filed a reply to the objections. (Doc. No. 389).

Having considered the relevant portions in the record in this case, including the evidence offered at the hearing and the arguments and briefs of counsel, the Court now makes its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure as made applicable to contested matters by Rule 9014. Based upon those findings and conclusions, the Court DENIES the Debtors' motion to modify for the reasons set forth below.

**II.     Jurisdiction**

The Court has subject matter jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b). This case and all related proceedings have been referred to this Court for decision pursuant to 28 U.S.C. § 157(a) and the Standing Order of United States District Court, Eastern District of Tennessee, entered July 18, 1984. Venue is proper based on 28 U.S.C. §§ 1408 and 1409.

**III.    Facts**

In his objection to the instant motion, the U.S. Trustee retraces, in detail, the Debtors' more than ten-year history in bankruptcy, which the Trustee recounts as spanning three cases, at least nineteen distinct bankruptcy plans, and eight motions to modify. (Doc. No. 387, at p. 2-13). The Trustee's detailed recitation of the procedural history of this case is well taken.[2]

The Debtors filed their current bankruptcy petition under chapter 11 of the Bankruptcy Code ("the Code") on March 16, 2015, in the Eastern District of North Carolina. (Doc. No. 1). The Debtors filed their first amended plan of reorganization on December 7, 2015 (Doc. No. 166) and

---

[2] The Court has limited its recitation of the factual allegations to those most relevant to resolving the instant motion.

2

a modification[3] of their first amended plan of reorganization on March 7, 2016 (Doc. No. 218). The treatment proposed for the Class 10 Creditor, Mr. Cooper, in the first amended plan was as follows:

> J. Class 10 – Nationstar Mortgage, LLC
>
> (1) Description of Claim: The Debtors are indebted to Nationstar Mortgage, LLC ("Nationstar") pursuant to a Promissory Note dated August 12, 2005, in the principal amount of $253,275.00. This Note is secured by a Deed of Trust recorded in the New Hanover County Registry on August 17, 2005, at Book 4890, Page 2320, which purports to grant a lien against the Debtors' real property commonly known as 417 Central Boulevard, Wilmington, NC 28401.
>
> The total balance owing to Nationstar as of the petition date is $339,057.41 as shown on Claim No. 11 filed on April 23, 2015.
>
> (2) Impairment: This class will be impaired.
>
> (3) Treatment: The Debtors will treat the claim of Nationstar as a secured obligation of the Debtors in the amount of $150,000.00. The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its secured claim is paid in full. The Debtors propose to amortize this obligation over a period of 480 months with a fixed interest rate of three-point-five (3.5%) percent per annum.
>
> Monthly payments will begin on the 15th day of the first full month following the Effective Date of the Plan,[4] and shall continue monthly until the secured claim is paid in full. For feasibility purposes, the Debtors estimate that payments will be in the amount of $581.09 per month.
>
> The remaining unsecured balance of Nationstar's claim, estimated to be $189,057.41, will be treated as an unsecured claim in Class 13.

(Doc. No. 166) (footnote added).

---

[3] Although the pleading is styled a modification, there had been no confirmed plan at the time of its filing. It was actually the second amendment. (*See* Doc. Nos. 166 and 218).

[4] The Debtors' first amended chapter 11 plan (Doc. No. 166), second amended chapter 11 plan (Doc. No. 218), and confirmed chapter 11 plan (Doc. No. 228), all define the "EFFECTIVE DATE" as "that date on which the Order Confirming Plan becomes final and non-appealable."

The treatment proposed for Class 10 in the second amended plan was the same. (Doc. No. 218). However, between the time of filing the second amended plan and the confirmation, the treatment of Mr. Cooper changed dramatically because of a settlement of an adversary proceeding the Debtors had filed against Mr. Cooper. In the adversary proceeding, *Hanson v. Nationstar Mortgage, LLC.,* Adv. Pro. No. 5:16-ap-10 (Bankr. E.D. N.C.), the Debtors had challenged the extent and validity of Mr. Cooper's lien and sought a declaration that the anti-modification provision in 11 U.S.C. § 1123(b)(5) was not applicable to certain real property located at 417 Central Boulevard, Wilmington, North Carolina. (Doc. No. 197, at p. 2-3). The court confirmed the Debtors' amended chapter 11 plan with modifications in an order entered April 11, 2016. (Doc. No. 228). The confirmed plan provided the following treatment for Class 10.

> J. Class 10 – Nationstar Mortgage, LLC
>
> (1) Description of Claim: The Debtors are indebted to Nationstar Mortgage, LLC ("Nationstar") pursuant to a Promissory Note dated August 12, 2005, in the principal amount of $253,275.00. This Note is secured by a Deed of Trust recorded in the New Hanover County Registry on August 17, 2005, at Book 4890, Page 2320, which purports to grant a lien against the Debtors' real property commonly known as 417 Central Boulevard, Wilmington, NC 28401.
>
> The total balance owing to Nationstar as of the petition date is $339,057.41 as shown on Claim No. 11 filed on April 23, 2015.
>
> (2) Impairment: This class will be impaired.
>
> (3) Treatment: Nationstar Mortgage, LLC and/or its successor in interest, is granted immediate relief from the automatic stay provided by 11 U.S.C. § 362, et.seq; the waiting period of F.R.B.P. 4001(a)(3) shall not apply; and no automatic stay, pursuant to 11 U.S.C. § 362(d)(4), shall be imposed to prevent the note holder from proceeding with foreclosure against the subject property in the event that the Debtors, either individually or together, or subsequent owner, files a bankruptcy petition. Although the relief from the 11 U.S.C. § 362 automatic stay is immediate, Nationstar Mortgage, LLC, may not immediately proceed with any foreclosure action against the property; Nationstar Mortgage, LLC, may proceed with

4

> a foreclosure action against the property 60 days from the Effective Date as defined by the Plan.

*Id.*

On August 23, 2016, the Debtors moved to modify their confirmed plan and sought further modification on October 17, 2016, to address issues unrelated to Class 10. (Doc. Nos. 271, 286). On January 17, 2017, the court entered a final decree, declaring that the Debtors' plan "has been substantially consummated as provided in 11 U.S.C. § 1101(2)" and closing the Debtors' case. (Doc. No. 309). In May 2017, the Debtors moved to reopen their case to modify their confirmed plan. (Doc. No. 311). The next month, they withdrew the motion (Doc. No. 318), and in July 2017, moved again to reopen the case, this time requesting to change venue (Doc. Nos. 319, 322). The Debtors filed a motion to modify their confirmed plan again on September 25, 2017. (Doc. No. 330). In this modification, the Debtors proposed to pay Class 10 $150,000 over 480 months with any deficiency payable as an unsecured claim. *Id.* at p. 2. The court granted the motion to reopen on November 15, 2017. (Doc. No. 346). The same day, the court entered a separate order granting the Debtors' motion to transfer the case to the Eastern District of Tennessee. (Doc. No. 347).

Now in this district, the Debtors withdrew their September 2017 motion to modify (Doc. No. 351) and the same day, January 3, 2018, filed a new motion to modify (Doc. No. 352). This modification proposed to pay Class 10 nothing except to reimburse Mr. Cooper for taxes and insurance over sixty monthly installments and treat the remaining claim as unsecured. This Court denied the Debtors' January motion without prejudice for failure to comply with E.D. Tenn. LBR 9013-1. (Doc. No. 353). On March 19, 2018, the Debtors filed another motion to modify their confirmed chapter 11 plan. (Doc. No. 357). The March motion proposed substantially the same treatment for Class 10 as the January motion had, both significantly changed the treatment of Class 10 that had been in the confirmed plan. (Doc. Nos. 352, 357). Mr. Cooper's claim was stripped of

5

its secured status on the basis that it was a fraudulent loan, and its claim was included with the unsecured creditors. Rather than allow a foreclosure to proceed, the Debtors proposed to pay only insurance and taxes incurred by the Class 10 Creditor during the period from the Effective Date of the plan to the date the proposed modification would be granted. (Doc. No. 357, at p. 2). The U.S. Trustee and Mr. Cooper's predecessor, Nationstar, each filed respective objections. (Doc. Nos. 359, 361). The motion and objections were set to be heard on May 21, 2018. The day of the hearing, the Debtors once again withdrew their motion.[5] That same day, the Debtors filed a new motion to modify (Doc. No. 372), which is now before the Court.

In the instant motion (Doc. No. 372), the Debtors state that "it is absolutely necessary" for the success of their plan to maintain the Wilmington property. This property served as the Debtors' principal residence when it was purchased, but it now sits empty. The Debtors would like to rent the property for additional income. To that end, the Debtors propose to modify the treatment of Class 10, Mr. Cooper, and Class 11, Springleaf Financial Services of North Carolina, Inc., or OneMain Financial ("OneMain"), in order to retain the property. The confirmed plan had treated the Class 10 and Class 11 creditors as secured creditors with liens against the Wilmington property.

The treatment proposed for Class 10 is:

> J. Class 10- Nationstar Mortgage, LLC (Now renamed to 'Mr. Cooper")
>
> (1) Description of Claim: The Debtors are indebted to Nationstar Mortgage, LLC ("Nationstar") pursuant to a Promissory Note dated August 12, 2005, in the principal amount of $253,275.00. This Note is secured by a Deed of Trust recorded in the New Hanover County Registry on August 17, 2005, at Book 4890, Page 2320, which

---

[5] The same day, May 21, 2018, the Debtors also filed a reply to the U.S. Trustee's objection to their prior motion to modify. (Doc. No. 370). As described in a separate order by this Court, the Debtors' reply was not set for a hearing because the issues addressed in it were made moot by the Debtors' withdrawal of their earlier motion. (Doc. No. 377). The Court clarifies that the Debtors' prior reply brief, which was related to an earlier motion to modify, is not considered herein.

> purports to grant a lien against the Debtors' real property commonly known as 417 Central Boulevard, Wilmington, NC 28401. The total balance owing to Nationstar as of the petition date is $339,057.41 as shown on Claim No. 11 filed on April 23, 2015.
>
> (2) Impairment.   This class of claim will be impaired.
>
> (3) Treatment:  The Debtors will treat the claim of Mr. Cooper as an unsecured obligation since the holder of this loan cannot legally foreclose on the named security, 417 Central Blvd. Wilmington, NC 28401 due to the fact that  (1) it is a fraudulent loan and (2) the agency which is represented by Mr.[ ]Cooper cannot be the owner or holder of the note since the holder of the note is America's Wholesale Lender which is a nonexistent entity and has no legal ability to transfer the note and deed of trust.

(Doc. No. 372, at p. 2).

The Debtors' modified plan also creates a new Class 14 for Mr. Cooper's unsecured claim of $339,057.41. The proposed treatment for this claim states:

> There is significant evidence that nothing is due under this mortgage, because the true owner of the note is a nonexistent entity. However Debtors are willing to make this proposal to Mr. Cooper:
>
> The Debtors propose to pay $500.00 on a monthly basis for a period of three years after which no mortgage payments shall be due this creditor. Payments are to start one month after this motion is confirmed by the Court.

(Doc. No. 372, at p. 3).

Mr. Hanson represented at the hearing that he believes the property is worth around $150,000, but he has been unable to get the lender to see the value his way. He said that the lender has been insisting upon a value of $400,000. Given the wide gap, negotiations between the Debtors and Mr. Cooper regarding a separate loan modification have not been successful.

The confirmed plan established that the property also secures a debt to OneMain pursuant to a Home Equity Line of Credit, in the maximum principal amount of $50,000. The total balance owing to OneMain as of the petition date is $49,953.79. (Claim No. 9). Just as with its treatment

of Mr. Cooper, the confirmed plan placed OneMain in a class by itself, provided immediate relief from the automatic stay, and allowed that it could proceed with a foreclosure action against the property sixty days from the effective date, as defined in the plan. (Doc. No. 228, at p. 12-13). The Debtors' latest proposal for Class 11 is that the debt owed to OneMain will be treated "as a fully paid obligation with no further payments required." (Doc. No. 372, at p. 3). The Debtors propose this modification based on correspondence with OneMain in which, according to the Debtors, OneMain stated the debt had been written off and instructed the Debtors to treat the claim as paid in full. *Id.* The Debtors provided no supporting documentation of such correspondence in their motion or at the hearing. However, no one appeared on behalf of OneMain to object to the modification despite having received notice of the modification.

The U.S. Trustee has objected to the Debtors' current motion to modify on three grounds – first, that the type of modification the Debtors seek is not permitted by section 1127(e), second, that the modification would be futile or would violate section 1127(f) and "would effectively unwind the previously confirmed plan," and third, that the proposed modification is inequitable. (Doc. No. 387, at p. 14). Mr. Cooper likewise objected (Doc. No. 384), asserting the Debtors' proposed modification is not permitted under section 1127(b) and is not filed in good faith under section 1129(a)(3). The motion to modify now before the Court seeks to remove the secured status from the Class 10 Creditor, recognized in the Debtors' first and second amended plan, and to prohibit the right to foreclose and recover its collateral granted to Class 10 in the confirmed plan. Mr. Cooper objects to the reclassification of its claim and the challenge to its foreclosure rights on the basis that reclassification is not a permitted modification under 11 U.S.C. § 1127.

The Debtors filed a reply at the hearing, which focused on challenges to the enforceability of Mr. Cooper's note and deed of trust. (Doc. No. 389).

8

**IV.    Issues**

The central issue before the Court is whether the Debtors' proposed modification is proper. To decide the issue the Court must address whether an individual may modify a chapter 11 plan after consummation of the plan. If the individual may, the Court must consider whether there are any limitations to that right and whether the Debtors' proposal exceeds them. Finally, if the proposed modification is allowable under section 1127(e), the Court must address whether the Debtors will be able to meet the requirements of section 1129(a)(3). Specifically, the Court will consider whether the Debtors can obtain the votes necessary to confirm a plan in which they would retain property but do not pay creditors in full. If not, then the plan may not be modified.

**V.    Legal Analysis**

**A.    For an Individual Debtor, Modification of a Chapter 11 Plan is Permissible, Subject to Certain Conditions, after Substantial Consummation.**

In its objection, Mr. Cooper asserts the Debtors' motion to modify "faces the insurmountable hurdle of 11 U.S.C. § 1127(b), which only permits a confirmed [c]hapter 11 [p]lan to be modified 'before substantial consummation of such Plan.' " (Doc. No. 384, at p. 2). Accordingly, Mr. Cooper points out that on January 17, 2017, the court entered a final decree declaring that the Debtors' plan has been substantially consummated as provided in 11 U.S.C. § 1101(2). *Id.* (citing (Doc. No. 309)). While that hurdle may be insurmountable for a chapter 11 corporate debtor, it may be cleared by an individual debtor. If the debtor is an individual, modification of a confirmed chapter 11 plan "is possible even after substantial consummation as long as payments under the plan have not been completed, subject to certain conditions." *In re Payne*, 523 B.R. 560, 574, n.7 (Bankr. E.D. Tenn. 2014) (citing 11 U.S.C. § 1127(e)). The Code sets out these conditions in section 1127(e). This statute provides, in part, that in the case of an

9

individual debtor, whether or not the plan has been substantially consummated, such a confirmed plan may be modified

> upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time period for such payments; or
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

11 U.S.C. § 1127(e). Here, as individual debtors in a chapter 11 who have not yet completed all plan payments (*see e.g.,* Doc. Nos. 369, 393), section 1127(e) permits the Debtors to seek modification of their confirmed plan even after substantial consummation, so long as the modification sought is the type described in the subparts of this section of the statute.

    **B.**    **The Proposed Modification is Improper Because It Alters the Value Provided for Secured Creditors under the Confirmed Plan.**

In this case, the Debtors are not providing payments to their creditors from another source, so the third subpart is not applicable. Therefore, in order for the modification to be permissible, it must fall under subparts (1) or (2). For an individual debtor in chapter 11, "[t]he three subsections of § 1127(e) are exclusive; if a proposed modification does not fall within one of the subsections, the modification cannot be allowed." *In re Sandford*, 498 B.R. 307, 311 (Bankr. D. N.M. 2013) (citing *In re Plummer,* 378 B.R. 569 (Bankr. C.D. Ill. 2007)); *see In re Gardner*, 522 B.R. 137, 142 (Bankr. W.D. N.C. 2014) (citing *Murphy v. O'Donnell (In re Murphy),* 474 F.3d 143, 150 (4th Cir. 2007)); *see also In re Payne*, 523 B.R. at 574, n.7. The U.S. Trustee argues that the Debtors' proposals to invalidate entirely a claim of one creditor and to change another creditor's claim from

10

secured to unsecured are not among the permissible options under section 1127(e). (Doc. No. 387, at p. 15).

As the Trustee explains in his analysis, "substantially identical" language to section 1127(e)(1)-(3) appears in section 1329(a)(1)-(3). (Doc. No. 387, at p. 16) (citing *In re Sandford*, 498 B.R. at 310, n.3); *see also In re Gardner*, 522 B.R. at 142. In *In re Sandford*, the court, in considering a motion to modify a chapter 11 plan, cited "case law on §§ 1229(a) and 1329(a) because there are so few cases construing § 1127(e)" and because section 1127(e) "mirrors the post-confirmation modification provisions of [c]hapter 12, 11 U.S.C. § 1229(a), and [c]hapter 13, 11 U.S.C. § 1329(a)(2)." 498 B.R. at 310, n.4. Similarly, this Court also will rely on case law citing section 1329(a) in its analysis.

The Sixth Circuit has held that "section 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim. . . . Instead, section 1329(a)(1) only affords the debtor a right to request alteration of the amount or timing of specific payments." *In re Nolan*, 232 F.3d 528, 532 (6th Cir. 2000) (citing 11 U.S.C. § 1329(a) (1993)). "Section 1329(a)(1) should not be read so broadly as to authorize the reclassification of claims." *Id.* at 533 (citing *In re Coleman,* 231 B.R. 397, 400 (Bankr. S.D. Ga. 1999)).[6] The *Nolan* court reasoned that, among

---

[6] The Sixth Circuit has discussed, and this Court acknowledges, "that courts outside this circuit remain split on the issue following our decision in *Nolan* [232 F.3d 528 (6th Cir. 2000)]," for varying reasons. *In re Adkins*, 425 F.3d 296, 303-05 (6th Cir. 2005); *see also In re Milano*, No. 09-61915, 2012 WL 1965661, at *2 (Bankr. N.D. Ohio May 31, 2012) (". . . [T]he Sixth Circuit Court of Appeals has steadfastly interpreted § 1329 narrowly, often in disagreement with other courts.") (Citations omitted). Distinct from this case, *Nolan,* in part, involved a debtor's post-confirmation voluntary surrender of collateral to the creditor to be sold and for the proceeds to be applied to the claim, creating an issue of whether a confirmed plan could be modified under 11 U.S.C. § 1329(a) to treat as unsecured any remaining deficiency. Through a lengthy analysis involving the scope of 11 U.S.C. §1329(a), *Nolan* broke from the reasoning in *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989). *Nolan*, 232 F.3d at 531-35. The *Nolan* court stated in its analysis that the reasoning represented in *In re Jock* "has been accepted by a sizeable minority of the district courts." 232 F.3d at 535, n.5. The Sixth Circuit acknowledged that "[s]ome courts simply disagree with *Nolan*'s interpretation of section 1329." *In re Adkins*, 425 F.3d at 303-04, n.12 (citing *Bank One, NA, v. Leuellen (In re Leuellen),* 322 B.R. 648, 654-55 (S.D. Ind. 2005); *In re Knappen,* 281 B.R. 714, 717 (Bankr. D. N.M. 2002); *In re Townley,* 256 B.R. 697, 699 (Bankr. D. N.J. 2000)). In interpreting section 1127(e), this Court will follow by analogy the interpretation of section 1329(a) applied by the Sixth Circuit.

other things, the plain language of section 1329 supports this conclusion, as "the terms 'claim' and 'payment' have two different meanings in the Bankruptcy Code." *Id.* at 534. "Claim" is defined in the Code as

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5); *In re Nolan*, 232 F.3d at 534. Use of the term "payment," while not defined in the Code, "is also consistent throughout the Code and reflects a meaning different from the term 'claim.' There is no reason to suppose that Congress intended in section 1329 to disregard the ordinary common law meaning of the term 'payment,' which is 'the delivery of money or other value by a debtor to a creditor.' " *In re Nolan*, 232 F.3d at 535 (quoting Black's Law Dictionary 1129 (6th ed. 1990)) (footnotes omitted). Section 1329(a), the *Nolan* court found, "clearly indicates that modifications after plan confirmation cannot alter a *claim* (a right to a remedy or payment of a certain total amount), but can extend or compress payments and reduce or increase the *amount* of the delivery of value planned as an eventual satisfaction for the creditor's claim." *Id.* at 535 (footnote omitted, emphasis in original).

The Court concludes that section 1127(e), like section 1329(a), "only permits modification of the amount and timing of payments, not the total amount of the claim." *In re Nolan*, 232 F.3d at 535 (emphasis in original omitted)). The Debtors' confirmed plan had granted the lienholders on the Wilmington property the ability to proceed with foreclosure on a property that the Debtors valued on Schedule A at $185,000. (Doc. Nos. 16, 228). Section 1127(e)(1) would allow the

Debtors to propose to pay the value of the property in multiple, smaller payments rather than one payment received in a foreclosure sale. Subpart (2) would allow a modification to extend the timing of the payments over a longer period of time. Either of those modifications would still require the Debtors to meet the requirements of section 1127(f). However, the proposed modification goes much further than either subpart (1) or (2) would allow.

The proposed modification of the treatment of Class 10 deprives Mr. Cooper of its remedy of foreclosure, which is an alteration of the claim under *Nolan*. *In re Nolan*, 232 F.3d at 535. It reduces the total amount to be paid on Mr. Cooper's Class 10 claim from the value of the Wilmington property to $0. Such a reduction of the total amount of the claim is also prohibited under *Nolan*. *Id.* There is some amount paid to Mr. Cooper, but it is pursuant to a new class of unsecured creditors (Class 14) proposed by the Debtors. The class is composed of only Mr. Cooper. The proposed treatment allows Mr. Cooper's claim in full for $339,057.41, but only as an allowed unsecured claim. The distribution is $18,000, an amount unrelated to the value of the property. Prior plan proposals and even Mr. Hanson's representations at the hearing indicate that the value is $150,000. Finally, Class 14 strips Mr. Cooper of its rights to further payments by providing that "no mortgage payments shall be due this creditor" after payment of the $18,000. (Doc. No. 372, at p. 3). This modification of Class 10 treatment even with the additional consideration paid in Class 14 is an impermissible modification of a confirmed, consummated plan.

To hold otherwise, i.e., to allow a claim to be reclassified or invalidated through a section 1127(e) modification, raises equitable concerns. The Sixth Circuit Court of Appeals has noted that the language of "section 1329(a) allows only the debtor, the trustee, and the holders of unsecured creditors to move for a modification under that section[.]" *In re Adkins*, 425 F.3d 296, 301 (6th Cir. 2005) (discussing *Nolan,* 232 F.3d at 533). Notably, the secured creditor is not extended the

same right under that Code section. Allowing a claim to be reclassified through a section 1329 modification "would create an inequitable situation where the secured creditor could not move to reclassify its claim if the collateral securing the claim appreciates in value, but others can move to shift the burden of a collateral's depreciation in value to the creditor." *Id.* Adopting the holding of *In re Banks*, 161 B.R. 375, 377 (Bankr. S.D. Miss. 1993) (citing *Norton Bankruptcy Law and Practice 2d* § 124:3, pp. 124–25 and 124–26 (1993)), the *Nolan* court "reject[ed] the notion that Debtors have such wide latitude to subject the creditor to their whims throughout the life of the plan." *Nolan,* 232 F.3d at 533-34.

Section 1127(e) contains the same list of parties who may request modification. 11 U.S.C. § 1127(e). Because the secured creditor is prohibited from seeking a modification of a chapter 11 plan that would reflect a higher value and thereby require the payment of a greater secured claim amount, the Court finds the same inequity would exist if the Court allows these Debtors to reduce this creditor's recovery to an amount that is less than the value of the collateral.

The potential inequities of such a modification are even more apparent in this case. The Debtors are not trying to modify the secured creditor's treatment to surrender collateral, which has become less valuable as a result of some circumstance that occurred after confirmation. The Debtors are proposing to retake collateral previously surrendered to satisfy the confirmation requirements of sections 1122(b)(5) and 1129(b)(7)(A)(ii), thereby obtaining the support of Mr. Cooper for confirmation; then strip that creditor's lien rights in order to create equity in the property; and finally, keep that newly created equity for themselves. Such a modification exceeds the limited relief authorized by 11 U.S.C. § 1127(e).

While the Court has similar concerns about the proposed modification of the treatment of Class 11, OneMain, that creditors has not filed an objection. The Trustee did object to the Debtors'

proposed modification of the confirmed treatment of OneMain. (Doc. No. 387). However, the Court is unclear as to whether OneMain consents to the modification. Having found that there are other problems with the modification discussed in Section D. of Part V. below, the Court finds it unnecessary to rule on the Trustee's objection to modification of OneMain's treatment.

### C. The Modification is Improper Because the Validity of Mr. Cooper's Claim Has Been Previously Determined.

The Debtors attempt to justify their impermissible modification of the confirmed treatment of Mr. Cooper's claim by challenging the enforceability of its deed of trust. Based on the history of this case leading to confirmation, that challenge cannot be successful.

A confirmed chapter 11 plan is binding on the creditors as well as the debtor. *In re Dore & Assocs. Contracting, Inc.*, 43 B.R. 717, 718 (Bankr. E.D. Mich. 1984) (11 U.S.C. § 1141(a)). Although certain post-confirmation modifications are authorized under sections 1127(e), "courts grapple with modifications because of their natural tendency to disturb the binding effect of a confirmed plan . . . ." *In re Milano*, No. 09-61915, 2012 WL 1965661, at *2 (Bankr. N.D. Ohio May 31, 2012) (citing *Storey v. Pees (In re Storey),* 392 B.R. 266 (B.A.P. 6th Cir. 2008)). "[C]onfirmation of a plan has been described as 'res judicata of all issues that could or should have been litigated at the confirmation hearing.' " *In re Adkins*, 425 F.3d at 302 (quoting *In re Cameron,* 274 B.R. 457, 460 (Bankr. N.D. Tex. 2002)).

With respect to Mr. Cooper's lien, the Debtors seek modification now to

> treat the claim of Mr. Cooper as an unsecured obligation *since the holder of this loan cannot legally foreclose on [the property] due to the fact that (1) it is a fraudulent loan* and (2) the agency which is represented by Mr. [ ] Cooper cannot be the owner or holder of the note since the holder of the note is America's Wholesale Lender which is a nonexistent entity and has no legal ability to transfer the note and deed of trust.

15

(Doc. No. 372, at p. 2) (emphasis added). While granting the Debtors relief from a "fraudulent loan" held by "a nonexistent entity" would seem to be a compelling reason to allow modification, the issue of the validity of Mr. Cooper's claim has already been addressed.

In the weeks before confirmation, the Debtors brought an adversary proceeding, *Hanson v. Nationstar Mortgage, LLC*, to determine the validity and extent of the mortgage claim. They also sought a declaration from the court that the anti-modification provision in 11 U.S.C. § 1123(b)(5) would not be applicable to the property. (Doc. No. 197, at p. 2-3). Mr. Cooper provided in its objection to the current motion that the dismissal of the adversary proceeding "was a material element of the negotiated treatment of the real property in Class 10 as announced to the Court during the Confirmation Hearing on March 8, 2016." (Doc. No. 384, at p. 3). The record reflects the adversary proceeding was closed after the confirmation hearing on the Debtors' amended plan but prior to the court's entry of the confirmation order. Mr. Cooper adds that the Debtors voluntarily dismissed their adversary proceeding with prejudice. *Id.* at p. 2-3.

Mr. Hanson admitted at the hearing that his position that the loan was fraudulent goes to the extent, validity, and priority of Mr. Cooper's lien. He also admitted at the hearing that the issue of Mr. Cooper's standing to enforce the loan could have been raised as a challenge to the validity of the lien in the adversary proceeding. He also admitted that the dismissal with prejudice of that adversary proceeding was a condition to Mr. Cooper's consent to the confirmation of the plan the Debtors now seek to modify.

Mr. Cooper argues that the Debtors are precluded from now arguing its claim is invalid. (Doc. No. 384, at p. 2). The Court agrees. The Debtors are bound by the negotiated terms of their confirmed plan and their dismissal with prejudice of their challenge to Mr. Cooper's claim and secured status. Accordingly, the Debtors' use of a motion to modify a confirmed plan to relitigate

16

the issues that were raised or could have been raised in the adversary proceeding is improper. The doctrine of res judicata provides "that a valid and final judgment on a claim precludes a second action on that claim or any part of it," adding that claim preclusion "applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action." *In re Gandy*, No. 11-30369, 2013 WL 3216130, at *3 (Bankr. E.D. Tenn. June 25, 2013) *(quoting J.Z.G. Res., Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 214 (6th Cir. 1996)) (emphasis in original; internal quotation marks omitted). The Debtors dismissed their adversary proceeding with prejudice, which, for purposes of res judicata, "is the equivalent of a final judgment on the merits." *Id.* at *4 (quoting *Hackney v. Hackney (In re Hackney),* 2008 WL 4830040, at *10 (Bankr. N.D. Ala. Oct. 10, 2008) (internal quotation marks omitted)). "There can be little doubt that a dismissal with prejudice bars any further action between the parties on the issues subtended by the case." *Id.* (*quoting Classic Auto Refinishing, Inc. v. Marino (In re Marino),* 181 F.3d 1142, 1144 (9th Cir. 1999)) (internal citations and quotation marks omitted). Given the procedural history of this case, the Court finds the Debtors now are precluded from using a plan modification to obtain a result they previously relinquished in order to obtain confirmation.

For the reasons stated above, the Court concludes the Debtors' modification of their confirmed chapter 11 plan is impermissible under section 1127(e).

**D.     The Proposed Modification is Improper Because the Modified Plan is Not Confirmable.**

Although the Court could stop at this point, the Debtors' repeated efforts to find a treatment for Mr. Cooper that they can afford and that Mr. Cooper will accept leads the Court to address a second argument raised by the parties. Pursuant to section 1127(f)(1), "[s]ections 1121 through 1128 and the requirements of section 1129 apply to any modification under subsection (e)." The

17

Trustee argues that to the extent the Debtors' "modification would be permitted under § 1127(e), it would still be inappropriate under § 1127(f)." (Doc. No. 387, at p. 17) (footnote omitted). Specifically, the Trustee provides, in part, that a modified plan would be subject to voting pursuant to section 1129(a)(8). (Doc. No. 387, at p. 17). "[Mr. Cooper], which has already objected to the current modification motion, would certainly vote against that same modified plan since it strips it of its lien and gives it only monthly payments of $500 for [three] years." *Id.* As the Trustee points out, the Debtors' most recent modified plan places Mr. Cooper in its own class of unsecured creditors, Class 14, "so its vote would clearly carry that class." *Id.* (citing 11 U.S.C. § 1126(c)). At the hearing, counsel for Mr. Cooper confirmed that her client would vote against the modified plan. Because of Mr. Cooper's stated position, the Court finds attempts to confirm the Debtors' proposed modified plan would be futile under section 1129(a)(8).

Under section 1129, generally "the court cannot confirm a plan if any impaired creditor votes to reject it," though subsection (b) of the statute "creates an exception to that general rule, permitting confirmation of nonconsensual plans—commonly known as 'cramdown' plans—if 'the plan . . . is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.' " *Ice House Am., LLC v. Cardin*, 751 F.3d 734, 737 (6th Cir. 2014) (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 132 S. Ct. 2065, 2069, 182 L. Ed. 2d 967 (2012); quoting 11 U.S.C. § 1129(b)(2)(A)). For a plan to qualify as " 'fair and equitable' for purposes of § 1129(b), it must satisfy the absolute-priority rule." *Id.* (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 202, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988)). "As codified, the rule provides that every unsecured creditor must be paid in full before the debtor can retain 'any property' under a plan." *Id.* (citing 11 U.S.C. § 1129(b)(2)(B)(ii)). This rule is not

satisfied under the Debtors' proposed modified plan, in which the Debtors seek to retain certain real property while Mr. Cooper is paid a fraction of its unsecured claim. (Doc. No. 372, at p. 2-3).

The Debtors' proposed modification would not succeed under the confirmation process required under section 1129(a) or (b). As a result, the proposed modification is not confirmable under section 1127(f).

## VI. Conclusion

For the reasons stated above, the Court has concluded that the Debtors' proposed modification of their confirmed chapter 11 plan is not permitted under section 1127(e) or in the alternative, section 1127(f). Because the Debtors do not propose a permitted modification, the Debtors' motion is DENIED. Mr. Cooper had asserted in its objection the issue of good faith. Because the motion cannot succeed under section 1127, the Court finds it is not necessary at this time to address whether the Debtors filed their motion to modify in good faith as required by 11 U.S.C. § 1129(a)(3). The Court acknowledges that the Debtors are proceeding pro se and are facing difficult financial circumstances in their efforts to find a way forward. The Court has provided its interpretation of the limits of modification and the requirements of the absolute priority rule in this circuit for the Debtors' consideration with respect to any future motions to modify the confirmed plan. Should further modifications be proposed and an objection to the Debtors' good faith be raised, the Court will consider good faith at that time in light of this opinion.

A separate order will enter.

# # #