

**SO ORDERED.**
**SIGNED this 24th day of July, 2019**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **George Robert Hanson,** | ) | |
| **Mary Darlene Hanson,** | ) | No. 4:17-bk-15656-SDR |
| | ) | Chapter 11 |
| | ) | |
| Debtors | ) | |

### MEMORANDUM OPINION

**I.    Background**

George Hanson and Mary Hanson ("the Debtors") filed a motion to change venue that seeks to transfer their case back to the United States Bankruptcy Court for the Eastern District of North Carolina, where it originated. [Doc. No. 436]. Secured creditor First Community Bank of Tennessee ("First Community Bank")[1] objects to the transfer. [Doc. No. 437]. The Court heard

---
[1] This creditor also appears in the record as "First Community Bank of Bedford County."

1

both matters on April 15, 2019 and continued both to July 1, 2019, at which time the Court took the Debtors' motion and creditor's objection under advisement. For the reasons set forth below, the Debtors' motion to change venue is GRANTED.

**II.    Jurisdiction**

The Court has subject matter jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b). This case and all related proceedings have been referred to this Court for decision pursuant to 28 U.S.C. § 157(a) and the Standing Order of United States District Court, Eastern District of Tennessee, entered July 18, 1984. Venue is proper based on 28 U.S.C. §§ 1408 and 1409. These are the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules Bankruptcy Procedure, made applicable to contested matters by Rule 9014.

**III.    Findings of Facts**

The Debtors filed their current bankruptcy petition under chapter 11 of the Bankruptcy Code ("the Code") on March 16, 2015, in the Eastern District of North Carolina. [Doc. No. 1]. At that time, they resided at 417 Central Boulevard, Wilmington, North Carolina. In October of 2016, the Debtors changed their address to another Wilmington residence, 125 Chadwick Avenue. Their plan was confirmed on April 11, 2016. [Doc. No. 228]. At confirmation, the Debtors owned six lots of real property in Tennessee and two in North Carolina, each of which was subject to at least one mortgage. Under the plan, the Debtors were to retain and make ongoing payments on all but one of the properties in Tennessee and on one of the two properties in North Carolina. The plan granted relief from stay as to the two properties for which the Debtors did not propose to make payments, and both have since been sold in foreclosure. The plan was substantially consummated, and the North Carolina bankruptcy court administratively closed the Debtors' chapter 11 case on January 17, 2017. [Doc. No. 309].

The Debtors filed with the North Carolina bankruptcy court a motion to reopen their case in May 2017 to allow them to modify their confirmed plan. [Doc. No. 311]. Nationstar Mortgage, LLC, d/b/a Mr. Cooper ("Nationstar"), objected. [Doc. No. 317]. The Debtors withdrew their motion on June 13, 2017. [Doc. No. 318]. About a month later, the Debtors filed a motion to change venue [Doc. No. 319], as well as another a motion to reopen the case [Doc. No. 322] and a motion to modify the plan [Doc. No. 330].

In the motion to change venue, the Debtors requested that their case be transferred from North Carolina to the United States Bankruptcy Court for the Eastern District of Tennessee on the basis that the Debtors anticipated a move to Tennessee and wanted to manage their remaining properties from there. [Doc. No. 319]. The Debtors stated therein that "their work in this district is finished and Debtors anticipate a move to Tennessee in the near future and it is important to complete this change of venue as soon as possible." [*Id.* at p. 1]. After a later hearing in which "Mr. Hanson explained that he and Mrs. Hanson recently and permanently relocated to Fayetteville, Tennessee," the original court granted the Debtors' motion to reopen "for the purpose of considering a motion to change venue" [Doc. No. 346] and granted the motion to transfer the case. [Doc. No. 347]. The case was transferred to this district on December 12, 2017.

The North Carolina court also transferred to this Court the Debtors' pending motion to modify plan, through which the Debtors sought to require Nationstar, secured by the real property located at 417 Central Boulevard, Wilmington, North Carolina, to forego foreclosure and accept a lower value for its collateral. [Doc. No. 330]. The Debtors had sought this modification after the confirmation order had become final and a post-confirmation loan modification had fallen through. The Debtors withdrew their motion to modify and filed another in January 2018.

After several procedural false starts in this district, the Debtors correctly set a motion to modify [Doc. No. 357], and the Court heard arguments on the motion along with objections filed by the U.S. Trustee [Doc. No. 359] and Nationstar [Doc. No. 361]. The modification hearing was first held on April 16, 2018 and continued to May 21, 2018. The day of the continued hearing, the Debtors withdrew the motion and again filed a new motion to modify [Doc. No. 372], set for a hearing on July 23, 2018. The U.S. Trustee and Nationstar again objected to the modification. [Doc. Nos. 384, 387]. The Court denied the modification on September 26, 2018. [Doc. No. 395, 396]. Six days later, the Debtors filed another motion to modify [Doc. No. 399], which drew objections by Nationstar and the U.S. Trustee. [Doc. Nos. 406, 408]. First Community Bank also objected. [Doc. No. 404]. Ultimately, on November 21, 2018, the Court granted the Debtors' motion to modify "only to the extent" to allow the Debtors "to change the name of the disbursing agent form 'Richard P. Cook, attorney, selected by the Court,' to 'the Debtors, George and Mary Hanson,' " but otherwise denied all other relief requested. [Doc. No. 417].

The next week, on November 30, 2018, the Debtors filed their first motion to change venue to transfer the case back to North Carolina. [Doc. No. 419]. The ground for the change was that Hurricane Florence had done extensive damage to the Debtors' North Carolina properties and they needed to relocate to Wilmington to organize and supervise repairs. [*Id.*]. First Community Bank opposed the transfer, arguing that the Debtors have ongoing operations and active constituencies in Tennessee, and that the Debtors do not assert that the move is permanent or that they would be changing their domicile. [Doc. No. 425]. The Court denied the motion January 10, 2019. [Doc. No. 431].

On March 22, 2019, the Debtors again filed a motion to change venue. [Doc. No. 436]. Creditor First Community Bank again objected. [Doc. No. 437]. At hearing on the motion on April

4

15, 2019, Mr. Hanson announced that the Central Avenue property in Wilmington, North Carolina had been foreclosed and that he was working on repairs at the 125 Chadwick Avenue property, which he represented was not habitable. At the hearing, Mr. Hanson was unclear about where the Debtors would ultimately choose to reside. He owned more properties in Tennessee than North Carolina, but the North Carolina property needed more attention. He also discussed medical concerns he had and raised the possibility of moving to California, where he has more family. Given his uncertainty about whether he would relocate to North Carolina, the Court continued the hearing on the motion to change venue until July 1, 2019.

At the July 1, 2019 hearing, Mr. Hanson explained that he and Mrs. Hanson have moved from Fayetteville, Tennessee, back to the 125 Chadwick Avenue property in Wilmington, North Carolina. He stated that they intend to live there. He plans to sell the properties he owns in Tennessee. Mr. Hanson testified regarding problems he has had due to hurricane damage at his residence in Wilmington and described potential litigation he may pursue against the contractors hired to repair that property. He also expressed his concern that he would need to come to the bankruptcy court to enforce injunctions against the collection actions taken by contractors on the 125 Chadwick Avenue property.

**IV.    Analysis**

Under 28 U.S.C. § 1412, this Court has authority transfer a case "in the interest of justice or for the convenience of the parties." *See also* Fed. R. Bankr. P. 1014(a)(1). The party seeking the transfer has the burden of proof and must show the reason by a preponderance of the evidence. *In re Gurley*, 215 B.R. 703, 708 (Bankr. W.D. Tenn. 1997) (citing *In re Jolly*, 106 B.R. 299 (Bankr. M.D. Fla. 1989); *In re Windtech, Inc.,* 73 B.R. 448 (Bankr. D. Conn. 1987); *In re HME Records, Inc.,* 62 B.R. 611 (Bankr. M.D. Tenn. 1986)).

The ultimate decision rests within the sound discretion of the bankruptcy court. *In re Bauer*, No. 09-32001, 2010 WL 1905087, at *3 (Bankr. E.D. Tenn. May 12, 2010) (citing *Dwight v. TitleMax of Tenn., Inc.,* 2010 WL 330339, at *2 (E.D. Tenn. Jan. 21, 2010)). To determine whether, under 28 U.S.C. § 1412, it is appropriate to transfer venue of a case, bankruptcy courts should consider the following equitable considerations:

> (1) proximity of creditors to the court; (2) proximity of the debtor to the court; (3) proximity of necessary witnesses; (4) availability of process to compel attendance of uncooperative or unwilling witnesses; (5) location of the assets; (6) location of relevant documents or records; (7) accessibility to sources of proof; ([8])[2] relative financial means of the parties; ([9]) locus of operative facts and events giving rise to the action; ([10]) each forum's familiarity with the governing law; ([11]) economical and efficient administration of the estate; ([12]) deference and weight accorded to the plaintiff's choice of forum; and ([13]) trial efficiency, fairness, and interests of justice based on a totality of the circumstances.

*Id.*, at *3-4 (citing *Dwight,* 2010 WL 330339, at *2) (footnote added); *see also Steed v. Buckalew (In re Rivas)*, No. 08-12333, 2009 WL 3493597, at *3 (Bankr. E.D. Tenn. Oct. 27, 2009) (quoting *Dorsey v. Hartford Life & Accident Ins. Co.,* No. 1:08–cv–243, 2009 WL 703384, at *3 (E.D. Tenn. Mar. 16, 2009)) (applying a similar nine-factor analysis).

The above factors weigh in favor of a transfer. The Debtors wish to transfer their case to North Carolina, and the Court gives deference to the Debtors' choice of forum. "Ordinarily, the level of deference is quite high." *In re Rivas*, 2009 WL 3493597, at *4 (citation omitted). Mr. Hanson testified at the July 1, 2019 hearing that he and his wife are now residents of North Carolina. They returned to North Carolina in April 2019 and intend to stay there. They reside full time at their property at 125 Chadwick Avenue in Wilmington, having sufficiently finished the

---

[2] In *In re Bauer*, No. 09-32001, 2010 WL 1905087, at *3 (Bankr. E.D. Tenn. May 12, 2010), the court lists thirteen equitable factors, each one numbered. Mistakenly, however, the court assigns two factors as number seven.

repairs there, though the property is embroiled in construction claims. Mr. Hanson also informed the Court that he has cancer and that his treating physician is in North Carolina. He asserted that the cancer treatments he receives make it difficult to travel to Tennessee. The Debtors described in their motion injuries they sustained in a December 2018 automobile accident that have made it difficult for them to travel by vehicle from North Carolina to Tennessee and indicated other modes of travel are too costly. [Doc. No. 436, at p. 1].

The Court also has considered the convenience and fairness to the other creditors, including First Community Bank, which opposes the transfer and holds a lien on several of the Debtors' Tennessee properties. The bank's concern is that, should it be brought back to bankruptcy court, it will be placed at a disadvantage by having to travel to North Carolina. The Court appreciates that concern. The risk of multiple hearings with these Debtors is very likely, given their history. For example, the Court refers to Doc. No. 387, filed July 2018, in which the U.S. Trustee retraces, in detail, the Debtors' more than ten-year history in bankruptcy, which the Trustee recounts—at that time—as spanning three cases, at least nineteen distinct bankruptcy plans, and eight motions to modify. [*Id.* at p. 2-13].

However, counsel for First Community Bank provided at the July 1, 2019 hearing that, after the instant motion is resolved, she did not foresee a need in this case for the Debtors or the bank to be actively before the bankruptcy court, noting there is a confirmed plan and that the parties are able to work together by telephone. Counsel for First Community Bank similarly stated in her written objection, "[T]here is no need for appearances in the Tennessee Court, but for the motions being filed by the Debtors." [Doc. No. 437, at p. 2].

The minimal need for the involvement of this Court is supported by the Debtors' quarterly report, filed in May 2019. [Doc. No. 455]. It reflects that the remaining loans with First Community

Bank are in compliance with the plan. Payments also have been made as proposed to Class 3 priority creditors—the IRS and the North Carolina Department of Revenue. The report also provides the Debtors have failed to comply with their payments to Class 2 priority creditors but that they expect that these defaults will be corrected by year's end. The Court finds it unlikely that the creditors, at this point, would be inconvenienced by the transfer. Mr. Hanson testified that his rental properties in Tennessee need attention, but that he intends to sell them. He said he had told the tenants that he was looking to sell the properties and then his tenants moved. The properties have not yet been listed for sale. Although he has more property remaining in Tennessee than North Carolina, the lienholders on the Tennessee property are being paid. If there is a default, the remedies would appear to be in state court. Should First Community Bank need to avail itself of a bankruptcy court, it appears to have substantially more financial resources than the Debtors.

As for many of the other factors, the Court does not find them to be determinative. It is unclear exactly what, at this point, the Debtors will need of the bankruptcy court. As a result, it is hard for the Court to determine what weight to attribute to the above factors related to location of relevant documents or records, access to proof, locus of operative facts and events giving rise to an action, the availability of subpoena powers, and proximity to necessary or unwilling witnesses.

To the extent that Mr. Hanson's affairs need the attention of the bankruptcy court, the issues are likely to involve the interpretation of the confirmation order and determination of any issue over which the court retained jurisdiction. According to Mr. Hanson's quarterly report, he contemplates that a final decree could be filed in December 2020. [Doc. No. 455, at p. 4]. The Debtor also stated in his motion that at that time "the majority of [b]ankruptcy issues right now are with the two properties in Wilmington[.]"[3] Mr. Hanson also testified about needing to pursue

---

[3] At the time of confirmation, the Debtors owned two properties in Wilmington, North Carolina. The confirmed plan provided to lift the automatic stay provided by 11 U.S.C. § 362 as to one of those properties, located at 417 Central

litigation against the contractors who performed work on the property located at 125 Chadwick Avenue in Wilmington. According to the order of confirmation, the property of the Debtors vested back in the Debtors on April 25, 2019. [Doc. 228, at p. 2-3, ¶ 9] (14 days after the entry of the confirmation order on April 11, 2016 is the effective date and vesting occurs three years from the effective date). Section XIII of the confirmed plan provided for the retention of jurisdiction by the bankruptcy court, but some of the bases relate to "property of the estate." [*Id.* at p. 20-21]. This Court believes that the court that entered the confirmation order is in the best position to construe the confirmation order and plan.

## V.     Conclusion

Considering the above factors, the Court finds that in light of the Debtors' return to North Carolina as full-time residents and their intent to remain there, the Debtor's choice of forum, the status of the performance of the plan, and the Debtors' potential need to pursue claims and causes of action related to their North Carolina residence, it appears to this Court that the Eastern District of North Carolina is more convenient for the Debtors and that a transfer is not unduly prejudicial to the Tennessee creditor. Further, it appears to be in the best interest of justice for the North Carolina bankruptcy court, which confirmed the plan, to interpret its own confirmation order, specifically regarding to what extent jurisdiction is retained and the meaning, at this time, of the terms of the confirmed plan.

Therefore, the Debtors' motion to change venue [Doc. No. 436] is GRANTED and the case will be transferred back to the United States Bankruptcy Court for the Eastern District of North Carolina – Wilmington Division. A separate order will enter.

###

---

Boulevard. Secured creditor Nationstar Mortgage, LLC, d/b/a Mr. Cooper, foreclosed on the 417 Central Boulevard property in April 2019, according to the Debtors' own quarterly report. [Doc. No. 455, at p.3].